UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMY JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 23 C 2027 |
| ) | |
| ANTHONY WOJCIK, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Dr. Kendall Crowns's motion to dismiss. For the following reasons, Crowns's motion is granted-in-part and denied-in-part.

**BACKGROUND**

Plaintiff Jeremy Jackson initiated this action against Crowns and Defendants Engel, Howard, Trahanas, Best, Cataldo, Wojcik, City of Chicago, and Cook County on March 30, 2023. Dkt. # 1. At a high level, Jackson alleges Defendants are responsible for Jackson spending twenty years in prison for a murder he did not commit. He brings twelve claims under 42 U.S.C. § 1983 and state law. Crowns seeks to dismiss all claims against him under Federal Rule of Civil Procedure 12(b)(6), which include Count I for due process violations, Count III for malicious prosecution and unlawful detention, Count IV for failure to intervene, Count V for conspiracy to violate constitutional rights, Count VII for malicious prosecution under state law, Count VIII

for intentional infliction of emotional distress, and Count IX for willful and wanton conduct.  Dkt. # 87.

The following facts come from the complaint and are assumed true for the purpose of this motion.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).  All reasonable inferences are drawn in Jackson's favor.  *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

At seventeen years old, Jackson was coerced into falsely confessing to the murder of Mitchell Dotson.  That coerced confession led to his wrongful conviction and twenty years of incarceration, before he was finally exonerated in 2022.

At all relevant times, Defendants Wojcik, Howard, Trahanas, Best, and Engel ("Defendant Officers") were police officers employed by the Chicago Police Department.  Anthony Curtis was identified as the shooter of Dotson, and Curtis denied that there was a second person who also shot Dotson.  But Defendant Officers coerced Curtis into stating there was a second shooter and naming Jackson as such.

Defendant Officers then coerced Jackson into confessing he was the second shooter.  Jackson's false confession was the product of physical and psychological abuse by Defendant Officers.  Despite knowing Jackson was innocent, they beat and threatened Jackson and denied him access to his sister and mother and to a lawyer during his interrogation.  Following this abuse, Jackson signed a false confession implicating himself in a murder he did not commit.

At all relevant times, Crowns was a Deputy Medical Examiner employed by Cook County. Jackson alleges Crowns conspired with Defendant Officers and Defendant Cataldo, an Assistant Cook County State's Attorney at the time of Jackson's prosecution, to fabricate evidence and falsely testify regarding scientific opinions on the cause of Dotson's death. Specifically, the initial autopsy of Dotson's body revealed two gunshot wounds and Defendant Officers conspired with Crowns to create false scientific evidence that the nature of the two gunshot wounds indicated they were fired from two different guns. This evidence was fabricated and not based on any scientific principles. Crowns did not conduct the autopsy but agreed to create this false evidence to bolster Jackson's prosecution. Crowns provided false testimony at Jackson's trial. This resulted in Jackson's conviction.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## **DISCUSSION**[1]

### I. Immunity

Crowns first seeks dismissal of all claims against him based on "absolute witness immunity as his only involvement in this matter stems from his testimony at trial." Dkt. # 88, at 2. He asserts he is entitled to absolute witness immunity for his trial testimony, and that "[w]itness immunity from liability for their testimony in judicial proceedings

---

[1] Crowns attaches to his motion the transcript of his testimony at Jackson's criminal trial, and asserts the Court can consider this document because his testimony is explicitly referenced in the complaint and the allegations against him stem from this expert witness testimony. Dkt. # 88, at 3 n.1. But even considering the trial transcript, the testimony Crowns cites in his motion to dismiss does not change the fate of any claims against him. For example, Crowns argues the transcript shows he did not conduct Dotson's autopsy (which was already alleged in the complaint), but it does not foreclose that Crowns may have submitted some other form of evidence or participated in the investigation prior to trial. The timing and amount of Crowns's involvement in the investigation of Dotson's murder is a question of fact that cannot be resolved now. And Crowns's argument that his testimony was not conclusive or definitive fails at the motion to dismiss stage, where all inferences must be drawn in Jackson's favor.

4

is a longstanding common law tradition that predates our national founding." *Id.* at 6 (citing *Briscoe v. Lahue*, 460 U.S. 325, 326 (1983)).

Jackson responds that Crowns mischaracterizes the complaint, which alleges not only that Crowns falsely testified at trial but that he separately fabricated false scientific evidence prior to trial. Dkt. # 99, at 3–5. While Jackson agrees that Crowns is immunized for his trial testimony, "that immunity does not extend to a witness's participation in the investigation of a case." *Id.* at 4 (citing *Stinson v. Gauger*, 868 F.3d 516, 528–29 (7th Cir. 2017), and *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1276 (N.D. Ill. 2021)). Jackson points to the complaint's allegations that Crowns "create[d] 'scientific' evidence that was entirely false" regarding Dotson's autopsy, which was "made-up" and "not based on any scientific principles, or any science at all. In fact, Defendant Crowns did not even conduct the autopsy, yet agreed to create this false scientific evidence to bolster the prosecution of Jackson." Dkt. # 1, ¶¶ 67–68. On reply, Crowns takes issue with the specificity of these allegations:

> Dr. Crowns'[s] testimony is his only concrete involvement in Plaintiff's criminal case. Plaintiff's Response suggests that Dr. Crowns had some other involvement, yet refuses to give notice as to what that involvement entailed. Plaintiff has not and cannot reasonably allege that Dr. Crowns took any action here apart from testifying at trial. Instead, Plaintiff's Response repeatedly italicizes the word 'create' as though this characterization means that Dr. Crowns took some action outside of his testimony. Plaintiff's strenuous emphasis cannot overcome these obvious deficiencies.

Dkt. # 112, at 2–3.

While a close call, we find Jackson has sufficiently alleged that Crowns

5

participated in the investigation and prosecution of Jackson by fabricating evidence, separate from and in addition to Crowns's trial testimony. Crowns and this Court may wish for more detail, but Jackson's pleading need only provide enough factual support to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S at 555. It is reasonable to infer at the motion to dismiss stage that, even though Crowns did not conduct Dotson's autopsy, he may have fabricated evidence during the murder investigation and lead up to trial. *See Cusick*, 573 F. Supp. 3d at 1276 ("A fair reading of Cusick's complaint is that the false reports were prepared during the investigatory stage and later used both to secure an indictment and at trial. . . . Defendants' conduct during the investigatory stage would not be immune, regardless of whether their reports were ultimately used at trial."); *see also Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012) ("Of course, we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime.") (cleaned up); *Stinson*, 868 F.3d at 528–29 (expert witnesses do not have absolute immunity for actions during murder investigation, as opposed to "their testimony at trial or preparations to testify at trial."). If, after discovery, it is clear that Crowns's only participation in this matter was his trial testimony, Crowns may file a motion for summary judgment on that basis.

## II.    Count I: Due Process

Crowns next asserts that Count I against him should be dismissed because his

expert testimony did not amount to a due process violation. Dkt. # 88, at 8. He argues that "[i]t is not a due process violation for an expert witness to 'give false or mistaken testimony' or 'overstate[] [their] conclusion' where the defendant has the opportunity to cross examine the witness." *Id*. (quoting *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1054 (N.D. Ill. 2015). But Crowns's position rests entirely on his (now rejected) argument that his "only role in Plaintiff's prosecution was his trial testimony[.]" *Id*. at 9. We have concluded that Jackson sufficiently alleged Crowns fabricated evidence separate from testifying at trial, and as Jackson points out, "it is well established that the fabrication of evidence gives rise to a due process claim in this Circuit." Dkt. # 99, at 8 (citing *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016)); *see Carter v. City of Chi*., 2018 WL 1726421, at *4 (N.D. Ill. 2018) ("There can be no doubt that the use of fabricated evidence to deprive a defendant of liberty violates the Fourteenth Amendment. . . . the Seventh Circuit has consistently upheld due process claims for fabrication of evidence."); *see also Cusick*, 573 F. Supp. 3d at 1265 (finding "sparse" allegations that coroner's report contained false information to be sufficient). Crowns's motion to dismiss is denied as to Count I.

### III. Count IV: Failure to Intervene

As to Jackson's failure to intervene claim, Crowns contends he did not have the legal authority or the ability to intervene against a prosecutor or police officers. Dkt. # 88, at 9–10. When defendants "argue the lack of allegations about their involvement or opportunity to intervene[,] . . . dismissal now is not warranted" even though

7

Crowns's "factual arguments may prove true at a later stage of the litigation[.]" *See Cusick*, 573 F. Supp. 3d at 1270–71. Crowns's motion to dismiss is denied as to Count IV for failure to intervene.

### IV. Count V: Conspiracy

Crowns also argues that the conspiracy claim against him should be dismissed as unsupported and conclusory. Dkt. # 88, at 12. Jackson disagrees, and points to the paragraphs of the complaint alleging Crowns fabricated evidence, Dkt. # 1, ¶¶ 67–68, and the paragraphs under Count V for conspiracy to violate constitutional rights, *id*. ¶¶ 167–73. These paragraphs generally allege that Crowns and the other Defendants, "acting in concert with one another and other co-conspirators, known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute, and convict Plaintiff for the Dotson shooting, regardless of Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights." *Id*. ¶ 168.

Crowns contends this is not enough, but cites an outdated pleading standard for conspiracy claims requiring "the who, what, when, why, and how" of the conspiracy. Dkt. # 88, at 12. "There is no heightened pleading standard for conspiracy claims." *Liebich v. Delgiudice*, 2021 WL 1103346, at *4 (N.D. Ill. 2021). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Jackson does so here; he identifies those involved in the alleged conspiracy and alleges they conspired to fabricate evidence to convict

8

Jackson. *See Cusick*, 573 F. Supp. 3d at 1270 (conspiracy allegations that the defendants "provided false evidence that Tracy was murdered, and their reports were used both to pursue the investigation against Cusick and at his trial" were sufficient); *see also Tobin v. McLeod*, 2023 WL 8236897, at *6 (N.D. Ill. 2023) (general purpose of conspiracy was to "effect the unlawful seizure" of the plaintiff). The approximate date of the alleged conspiracy was "[f]ollowing [Jackson's] coerced confession" on January 31, 2001, and leading up to Jackson's conviction in 2002. *See* Dkt. # 1, ¶¶ 41, 66, 72. Jackson also alleges an overt act by Crowns in furtherance of the conspiracy, i.e., fabricating evidence that Dotson was shot with two different weapons, and the Court can reasonably infer that Crowns and the other Defendants made an agreement to fabricate evidence to convict Jackson. *See Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) ("the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.") (cleaned up); *see also Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2023) ("rather conclusory" conspiracy allegations can suffice when it "is a challenge to imagine a scenario in which the [alleged behavior] would not have been the product of a conspiracy."); *Tobin*, 2023 WL 8236897, at *6. Crowns's motion to dismiss is thus denied as to the conspiracy claim.

## V. Counts III and VII: Malicious Prosecution

Moving on to Crowns's malicious prosecution claims, under Illinois law a plaintiff must prove: "(1) the commencement or continuance of an original criminal or

9

civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Lund v. City of Rockford*, 956 F. 3d 938, 949 (7th Cir. 2020) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Swick*, 169 Ill. 2d at 512. Crowns asserts he cannot be liable for state law malicious prosecution because he did not commence or continue Jackson's criminal prosecution. Dkt. # 88, at 2. We agree.

Illinois law "sets a high bar for holding private individuals culpable" for continuing a criminal prosecution:

> The defendant must take an active part in the[] prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused.

*Starks*, 123 F. Supp. 3d 1036 (quoting *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 44 (1997)); *see also Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 504 (1986) ("a defendant either must have initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation.").

Nothing in the complaint comes close to alleging that Crowns, a medical examiner and expert witness, initiated Jackson's prosecution or "insist[ed] upon or urg[ed] further prosecution" of Jackson. Crowns's response brief points only to vague and conclusory allegations but does not elucidate how Crowns may have exerted any influence over Jackson's prosecution. Dkt. # 99, at 14. Count VII for malicious prosecution under Illinois law is dismissed as to Crowns.

Crowns further contends that Jackson's federal malicious prosecution fails because Illinois tort law provides a similar cause of action. Dkt. # 88, at 9 (citing *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1190 (N.D. Ill. 2013), and *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001)). This argument is based on Seventh Circuit case law that was overturned by the Supreme Court in *Thompson v. Clark*, which recognized that claims for malicious prosecution are actionable under the Fourth Amendment. 142 S. Ct. 1332, 1337 (2022); *see Smith v. City of Chi.*, 2022 WL 2752603, at *1 (7th Cir. 2022) (recognizing that *Thompson* allows for Fourth Amendment malicious prosecution claims). To the extent Jackson's malicious prosecution claim is based in the Fourth Amendment, it may proceed. *See Sneed v. Vill. of Lynwood*, 2022 WL 5116464, at *2–3 (under post-*Thompson* Seventh Circuit law, malicious prosecution claims are permitted under the Fourth Amendment but not the Fourteenth Amendment).

However, for reasons similar to the state law claim, the complaint fails to sufficiently state a Fourth Amendment malicious prosecution claim against Crowns. "Such claims require that the prosecution was instituted without probable cause, that

11

the motive in bringing the charge(s) was 'malicious,' and that the prosecution terminated in favor of the accused." *Amos v. City of Chi.*, 2024 WL 640860, at *6 (N.D. Ill. 2024) (citing *Thompson*, 142 S. Ct. at 1338). The complaint simply does not allege how Crowns, as a medical examiner and expert witness, *instituted* the prosecution without probable cause. Furthermore, to the extent Count III also alleges unlawful detention, Jackson does not explain how Crowns would be a proper defendant for that claim by "causing" Jackson's detention. *See Walker v. City of Chi.*, 2022 WL 375515, at *4 (N.D. Ill. 2022) (unlawful detention claim requires the plaintiff to show "the defendant[s] (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.") (cleaned up). Count III for federal malicious prosecution and unlawful detention are dismissed as to Crowns.

## VI. Count VIII: Intentional Infliction of Emotional Distress

Crowns asserts that Jackson's intentional infliction of emotional distress ("IIED") claim must be dismissed because the allegations contain only "[b]are assertions of the state of mind" and "conclusory labels." Dkt. # 88, at 14 (citations omitted). To plead an IIED claim, a plaintiff must allege: (1) extreme and outrageous conduct; (2) the defendant's intent that the conduct inflict severe emotional distress, or knowledge that there was a high probability that the conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69 (2003). "[T]o qualify as outrageous,

12

the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id*. at 270. The distress inflicted must be such that no reasonable person could be expected to endure it. *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

Jackson's IIED claim can go forward. He alleges Crowns fabricated scientific evidence that Dotson was shot by two different weapons and falsely testified regarding the same at Jackson's criminal trial. The Court can reasonably infer that falsely implicating an innocent person in a murder would be outrageous conduct, and that if true, Crowns would have known there was a high probability that Jackson's conviction for a crime he did not commit would cause severe emotional distress. Jackson alleges he was convicted at the age of nineteen and remained in prison for twenty years before being exonerated, and that he suffered great mental anguish and suffering as a result. That is sufficient at this stage of the proceedings,

## VII. Count IX: Willful and Wanton Conduct

Finally, Crowns seeks to dismiss Jackson's claim for willful and wanton conduct "[f]or the reasons articulated in the City Defendants' Joint Motion to Dismiss." Dkt. # 88 (citing Dkt. # 48). In response, Jackson "incorporates by references his briefing in Dkt. Nos. 63 and 78." Dkt. # 99, at 15. As explained in the Court's order granting the motions to dismiss of Defendants Engel, Howard, Trahanas, Best, City of Chicago, and Cataldo as to Count IX, "[i]n order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—

13

that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." Dkt. # 126, at 4 (quoting *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs*., 2012 IL 112479, ¶ 19). As further explained in that order, "[a]s to the duty element, Count IX alleges only that [] Defendants 'had a duty to refrain from willful and wanton conduct in connection with the Dotson murder investigation.'" *Id*. at 5 (quoting Dkt. # 1, ¶ 196). We noted that was identical to the language found insufficient to plead a duty in *Fletcher v. Bogucki*, 2021 WL 4477968, at *8 (N.D. Ill. 2021), because it was "too vague to support a negligence claim." *Id*. at 5–6. We therefore "agree[d] with the *Fletcher* court's approach and [found] that the vague language of Count IX is insufficient to plead the elements of a negligence claim," and dismissed Count IX without prejudice. *Id*. at 6. We do the same here with respect to Crowns.

## **CONCLUSION**

Defendant Crowns's motion to dismiss [87] is granted-in-part and denied-in-part. Counts III, VII, and IX are dismissed without prejudice as to Crowns. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: May 14, 2024

14